[No. 32317.    Department One.    October 2, 1953.]

JACOB KAGELE, JR., *Respondent,* v. WILLIAM FREDERICK *et al.,* *Appellants.*[1]

[1]Reported in 261 P. (2d) 699.

*George H. Freese,* for appellants.

*Miller, Miller & Jansen* and *McCallum & Zellmer,* for respondent.

WEAVER, J.—This is an action for damages. Plaintiff was the victim of a savage and brutal beating administered by defendants. We will detail his injuries later. The jury returned a verdict for $11,410.58. Defendants appeal.

It is not necessary that we set forth the alleged causes of the fight. The pleadings and the evidence tendered the issue of self-defense. The verdict of the jury rejected it.

Appellants' first three assignments of error are: (1) that their separate demurrers to the complaint should have been sustained; (2) that a motion for separate trials should have been granted; and (3) that a motion to make the complaint more definite and certain should have been granted. All three assignments are argued upon the theory that defendants were not joint tort feasors.

At the time appellants' demurrers and motions were presented to the trial court, the pleadings only were before it. The complaint alleged:

"That at said time and place, the above named defendants William Frederick and Rudolph Frederick, *and each of them, acting together* did wilfully, intentionally, violently and unlawfully assult the plaintiff . . ." (Italics ours.)

Nor is the evidence such that it supports appellants' theory. The evidence discloses (and the jury was entitled to believe) that appellant William Frederick attacked respondent first. His brother, Rudolph Frederick, joined the fray almost immediately. Thereafter, they acted as an assault team to accomplish a united purpose. Richard Kagele, respondent's son, who was rendered unconscious for a time when hit on the head by a rock, testified that when he regained consciousness,

"Q. What did you do? A. Well, they [appellants] were coming from both ways. Q. In what position was he [respondent]? A. He was lying with his head toward the north and they were kicking his head from one side to the other, and when his head would fly to one side they would kick him from the other side."

Under circumstances such as these, it is not necessary that respondent allege and prove a conspiracy between the appellants in order to plead and prove a cause of action against appellants, jointly and severally.

"Except as stated in § 881 [which applies to nuisances], each of two or more persons whose tortious conduct is a legal cause of a harm to another is liable to the other for the entire harm." 4 Restatement, Torts, § 875.

The complaint alleges, and the evidence supports the conclusion, that appellants participated in the same assault,

committed at the same time, at the same place, upon the same person. The first three assignments of error are not well taken.

Appellants submitted written interrogatories to respondent. RCW 5.04.020, Rem. Rev. Stat., § 1226. They were answered the day before trial, more than twenty days after service. RCW 5.04.030 [*cf.* Rem. Rev. Stat., § 1227] Appellants moved to strike the complaint and to dismiss the action. RCW 5.04.060 [*cf.* Rem. Rev. Stat., § 1230] No motion for a continuance was made. Prejudice was not claimed nor shown.

■ The statute (RCW 5.04.060 [*cf.* Rem. Rev. Stat., § 1230]) provides a penalty for *refusal* to answer interrogatories, not for delay in answering them. In *Gostina v. Whitham,* 148 Wash. 72, 73, 268 Pac. 132 (1928), this court said

". . . that the striking of a complaint for failure to answer interrogatories is such a harsh remedy that it will not be resorted to, except upon a clear showing of prejudice to the opposing party."

We have examined the interrogatories and the answers. There is nothing in the record to indicate that appellants were prejudiced by the delay. The trial court did not abuse its discretion when it refused to strike the complaint.

■ One prospective juror stated that he had discussed the preparation of a will with one of the lawyers for respondent; that there was no unfinished business between them; that if he had a legal problem he would consult this lawyer; that, in his opinion, this former relationship would not prevent him from being a fair and impartial juror. Appellants' claim that the relationship of lawyer and client existed between the juror and the lawyer, is not borne out by the record.

In *McCorkle v. Mallory,* 30 Wash. 632, 638, 71 Pac. 186 (1903), this court said:

"Where the attorney is not a party to the action, a client in other causes, who is otherwise qualified, may not be challenged for implied bias."

A challenge of a juror for implied bias will not lie, simply because the juror and one of counsel are acquainted. Denial of the challenge was not an abuse of discretion.

■ Appellants assign error to the admission of evidence of the injuries sustained by Richard Kagele, son of respondent. Richard's participation in the fracas became an issue in the case when appellants alleged they acted in self-defense against respondent and his son. The evidence of what happened to Richard was admissible to refute the claim of self-defense. The jury was informed that no damages were sought for him. The evidence was within the issues of the case and its admission was not error.

■■ Appellants assign error to a portion of instruction No. 1, to instruction No. 23, and to the court's refusal to give appellants' requested instruction No. 9. These instructions and the requested instruction are not set forth in the briefs. Assignments of error 8 and 10 cannot be considered. Rule on Appeal 42 (1) (f), 34A Wn. (2d) 45; *State v. Green,* 38 Wn. (2d) 240, 229 P. (2d) 318 (1951); *Lujan v. Santoya,* 41 Wn. (2d) 499, 250 P. (2d) 543 (1952). In addition, no exception was taken to instruction No. 23. It became the law of the case. *White v. Department of Labor & Industries,* 41 Wn. (2d) 276, 248 P. (2d) 566 (1952).

■ Appellants assign error to the court's refusal to give requested instruction No. 8. We consider only that portion of the requested instruction which is set forth in the brief.

"You should not award any damages by way of punishment. The question of punishment is relegated to the criminal laws of the State and cannot be imposed in this case."

Appellants' counsel took exception to the court's refusal to give this instruction

". . . because the Court had permitted testimony over objection of counsel as to the alleged injuries of Dick Kagele, who was not a party to this suit. . . ."

We have already pointed out that the testimony was properly admitted in evidence and that the jury had been informed that no damages were sought for the injuries

suffered by Dick Kagele. The jury was instructed that "the damages must be limited to those shown by the evidence" and that their verdict "must not be arrived at through sympathy, passion, or prejudice." While we have no quarrel with the contents of the requested instruction, it was not error for the trial court to refuse to give it. The jury had already been properly informed.

Appellants urge that the trial court erred "in submitting the question of damages for loss of time to the jury." The court instructed the jury:

"In determining the amount of damages, if any, to be allowed, the jury may take into consideration the age, health, habits and pursuits of the injured party, the sex of the party injury [*sic*] and the circumstances of peril and suffering undergone, or which may be reasonably expected to be undergone in the future, *the impairment, if any, of the injured person's capacity to pursue some lucrative trade or profession,* and allowance may be made for permanent injury, mental and physical suffering and injuries to health, *loss or diminution of earning capacity. Recovery may also include compensation for money loss, if any, sustained by reason of the injury, such as loss of earnings or wages,* and expenses incurred in doctor's and hospital bills in effecting a cure." (Part of instruction No. 23) (Italics ours.)

As to their possible verdict, the jury was instructed:

"You will be furnished with two forms of verdict, one for the plaintiff assessing the amount of his recovery, in which (if you find for the plaintiff) you will fill in the amount of the recovery in the blank space therefor which you will find in the form of verdict; and one for the defendants." (Part of instruction No. 26)

The jury was further instructed that the respondent could recover only

" . . . for the whole result which would not have existed but for the said assault and battery." (Part of instruction No. 24)

It is apparent that, should the jury find for respondent, they should return a general verdict. There was no request or instruction that the jury make any findings or return a special verdict. The proposed verdict for respondent was

upon a printed form, with the identifying information typed. It required an insertion of the total general damages awarded respondent, the date, and the signature of the foreman.

The jury filled in the total amount of its award in respondent's favor. Then, in longhand, it made a segregation of the total; one item was "because of being unable to pursue his usual occupation, the sum of $5,000." The segregation was made below and through a series of dashes which indicated the bottom of the page was not to be used.

Appellants can find no solace in the form of the verdict for two reasons:

■ ■ *First,* the jury did not have a right to make a segregation of the amount of general damages in the absence of an instruction that it submit a special verdict. *Pearson v. Arlington Dock Co.,* 111 Wash. 14, 189 Pac. 559 (1920); *Sunset Oil Co. v. Vertner,* 34 Wn. (2d) 268, 208 P. (2d) 906 (1949). In *Rowe v. Safeway Stores,* 14 Wn. (2d) 363, 373, 128 P. (2d) 293 (1942), this court said:

"Conceivably, informal language injected into a general verdict by a jury may be of such a character as to render it fatally vague, ambiguous, or contradictory; but, where the intent of the jury is clearly indicated and the verdict is otherwise sufficient, the informal portions should be disregarded as surplusage. Treating gratuitous, explanatory remarks which a jury may append to its general verdict as a special finding of fact, or as a guide in determining how the jury may have resolved the factual issues, would invite surmise and conjecture and lead to uncertainty and confusion."

The intent of the jury to find for the respondent is clear. We regard the informal portion of the verdict as surplusage.

■ *Second,* the "question of damages" was submitted to the jury by the court's instructions, which we have quoted. No exceptions were taken to these instructions, and they became the law of the case. Appellants seventh assignment of error is not well taken.

■ Appellants argue that the amount of the verdict is excessive. We do not agree. The evidence shows that respondent's face was beaten almost beyond recognition. He

suffered a hemorrhage of the right eye. He had cuts on his lip, face, and in his nose. He was sore and suffered pain all over his body, particularly in his right ribs, lower spine, the lumbar region, sacrum, coccyx, left ankle, and jaws. He had a fracture of the right transverse processes of the second and fourth lumbar bodies of the lumbar spine. He had a fracture of the tibia and left fibula into the ankle joint. An injury to the common peroneal nerve caused a foot drop of the left foot. Since the injury he has been forced to walk with a cane or crutches. He was required to wear a cast for a long period of time. An operation was necessary to promote proper healing of the fractured ankle. There is evidence that respondent will be partially disabled as long as he lives, as a result of the beating. One of the appellants when leaving the scene of the assault said: "He is dead."

For the reasons set forth at some length in our recent opinion of *Kramer v. Portland-Seattle Auto Freight, ante* p. 386, 261 P. (2d) 692 (1953), we find no merit in the contention that the amount of the verdict is excessive.

Judgment notwithstanding the verdict of the jury can be granted only when the court can say, as a matter of law, that there is neither evidence nor reasonable inference from the evidence to justify the verdict. *Thompson v. Seattle,* 42 Wn. (2d) 53, 253 P. (2d) 625 (1953). The record discloses substantial evidence, which, if believed, supports the verdict of the jury. We cannot say, as a matter of law, that there was not substantial evidence upon the issues presented.

We said in *Rettinger v. Bresnahan,* 42 Wn. (2d) 631, 634, 257 P. (2d) 633 (1953):

"Granting or refusing a motion for a new trial is discretionary with the trial court, except where pure questions of law are involved. We will not interfere with a ruling upon such a motion unless it can be said from the record that the court abused its discretion. *Norland v. Peterson,* 169 Wash. 380, 13 P. (2d) 483. There is no abuse of discretion if there was a case for the jury. Such was the situation. See *Dyal v. Fire Companies Adjustment Bureau,* 23 Wn. (2d) 515, 522, 161 P. (2d) 321."

There was a case for the jury. The trial court did not abuse its discretion when it denied appellants' motion for a new trial.

The judgment is affirmed.

GRADY, C. J., MALLERY, HILL, and OLSON, JJ., concur.

---

November 12, 1953. Petition for rehearing denied.