LAURA REDWINE, Administratrix of the Estate of WILLIAM R. SHELTON, Deceased, and LAURA REDWINE, Individually,

*Appellant,* (*Plaintiffs below*)

vs.

GORDON FITZHUGH and JAMES FITZHUGH,

*Appellee,* (*Defendants below*)

(No. 2832; August 12th, 1958; 329 Pac. (2d) 257)

408

For the appellant, the cause was submitted upon the brief of A. Joseph Williams and Glenn A. Williams of Cheyenne, Wyoming, and oral argument by Mr. A. Joseph Williams.

For the appellee, the cause was submitted upon the brief of Maurer & Garst of Douglas, Wyoming.

Heard before Blume, C. J. and Harnsberger and Parker, JJ.

412

## OPINION

Mr. Justice HARNSBERGER delivered the opinion of this court.

Plaintiffs sued in trespass and a jury awarded plaintiff Laura Redwine $1,000 damages against defendant Gordon Fitzhugh, but it also awarded defendant Gordon Fitzhugh $2,351 upon his cross-petition against plaintiff Laura Redwine as damages for her interference with his diversion dam and headgates with resulting loss or destruction of his crops. No appeal is taken from the $1,000 judgment in plaintiff's favor, but plaintiff appeals from the judgment adverse to her.

The case comes to us upon an Agreed Statement of Case On Appeal, under the provision of Rule 75 of our new Wyoming Rules of Civil Procedure. This shows the appellant seeks reversal of the judgment against

her because: (1) The trial court overruled appellant's challenge for cause addressed to a juror who was a client of the law firm of which appellee's counsel was a member. This required appellant to use one of her peremptory challenges to remove that juror. Thereafter, when appellant had exhausted her peremptory challenges, another juror who was unsatisfactory to appellant, but against whom no cause for disqualification could be shown, was called and served as a juror in the case. (2) The cross-petition and the evidence adduced thereunder were based on an improper measure of damages. (3) The cross-petition insufficiently alleged a cause of action.

The particular facts relative to the challenged juror are: that he and his wife owned the majority of stock in a small corporation; the law firm of which the appellee's attorney was a member was employed by that corporation, although appellee's counsel in this case performed no service for the corporation; the corporation made its checks for legal services payable to the law firm in the firm name. It also appears that appellee's pleadings in this case were signed in the firm name as attorneys for the appellee's counsel. The other member of the law firm took no part in the preparation of this case. The agreed statement shows the lower court summarized the situation as follows:

"The Reporter will make the following notation in the record of this case: That upon the Voir dire, attorney for plaintiff in examining prospective juror Richard E. Fraidy, obtained a disclosure that the partner of the attorney for the defendant in this matter was the general attorney for the prospective juror.

"The juror upon examination by the court indicated that, in his opinion, such employment would not influence him in the decision of this matter.

"Attorney for plaintiff moved the court that such juror be excused for cause and the court refused to remove such juror for cause, to which moving the plaintiff requested and it is ordered that he have an exception.

"(Whereupon the jury was empaneled (sic).)

"The court will stand in recess for five minutes. If everyone will resume their present position at the end of that five minutes.

"(Whereupon at the hour of 9:53 o'clock a.m., recess was taken.)

"May the record show, with reference to the examination of juror Fraidy, that the plaintiff removed said juror on his first challenge and thereafter did exhaust (sic) his three challenges and that the attorney for the plaintiff does now further desire to remove an additional juror as on pre-emptory (sic) challenge but cannot do so for the reason that his pre-emptory (sic) challenges have been exausted (sic) and that, in the opinion of the attorney for plaintiff, his rights in obtaining an impartial jury have been impaired by the previous refusal of the court to remove juror Fraidy for cause."

Appellant reasons that the court's adverse ruling upon her challenge of the juror for cause amounted to an abuse of discretion and invites our attention to previous holdings of this court which point out that a legal discretion is one " * * * to be exercised in conformity with the spirit of the law and in a manner to subserve and not to defeat the end of substantial justice, * * * ", Lake v. Lake, 63 Wyo. 375, 399, 182 P.2d 824, 833, and that

" 'The term "abuse of discretion" does not mean any reflection upon the presiding judge, and does not carry with it an implication of conduct deserving censure, but is strictly a legal term indicating that the appellate court is of the opinion that under the circum-

stances the trial judge committed error of law in the exercise of his discretion' ''. Puterman v. Puterman, 66 Wyo. 89, 107, 205 P.2d 815, 822.

Counsel agree that our Wyoming Compiled Statutes, 1945, § 3-2405 and § 3-2406, which specify certain causes for challenge, fail to include the relation of attorney and client between the prospective juror and one of counsel in the pending case as cause which would disqualify the juror. Notwithstanding that omission, appellant says a juror may always be challenged for cause where such a relation exists and that the challenge should disqualify the juror if the guarantee of a fair and impartial jury is to be observed. Counsel also remind us this is a right assured by constitution, both state and federal (see generally 31 Am.Jur., 1958, Jury, § 158, p. 139, and 50 C.J.S. Juries § 226, pp. 967 et seq.) and counsel cite us Johnson v. State, 1 Okl.Cr. 321, 97 P. 1059, 18 Ann.Cas. 300, and State v. Russell, 73 Mont. 240, 235 P. 712, where such holdings were expressly made.

The appellee replies that in the instant matter the relation was not in fact between the juror and one of opposing counsel in the case, but only between a corporation in which the juror, together with his wife, owned a majority of the corporation's stock and a partner of the active counsel in this case. Appellee also claims the agreed statement is not positive to the effect that the relation of attorney and client between the corporation and the law firm existed at the time of trial, and finally appellee says the fact that the juror was unbiased and otherwise qualified was determined favorably to the juror by the trial court, and that the ruling should not be disturbed because of the trial court's superior opportunity to observe the juror's demeanor and his candor.

The issues thus presented suggest several questions, namely: (1) Does an attorney and client relation between a prospective juror and counsel in a case disqualify the juror even though our statutes do not expressly so provide? (2) Does a husband and wife ownership of control in a corporation which employs a firm of attorneys suffice to constitute the relation of attorney and client between a member of the law firm and the juror-husband? (3) Does employment of a law firm by a corporation under the named circumstances carry with it the relation of attorney and client between the juror-husband and the appellee's attorney who was a member of the employed law firm, but who had not personally performed any service for the corporation, although the corporation's payment for services performed for it by the other law partner was made to the law firm and when appellee's pleadings in the instant case were signed in the name of the law firm by the attorney conducting appellee's case? (4) Does the agreed statement sufficiently indicate the alleged relation existed at the time of trial? (5) Was the ruling of the court on the challenge within the sound discretion of the court, an abuse of discretion, or erroneous, as a matter of law?

However, because of our conclusions with respect to the first of these questions, it will be unnecessary to discuss the others.

It is fundamental that every litigant is entitled to have his rights fairly and impartially determined, and it is the duty of a trial court to see that a jury of competent, fair and impartial persons is impaneled. 50 C.J.S. Juries § 208a, pp. 944-945. Statutes which enumerate certain causes as disqualifying a prospective juror are not exclusive of other causes which may imply disqualifying bias or prejudice of the prospective juror, and such statutes do not deprive courts of

their inherent right to declare that such other causes also require dismissal of a prospective juror in order to ensure that litigants will have a fair and impartial trial. See Klinck v. State, 203 Ind. 647, 179 N.E. 549, 79 A.L.R. 272; Johnson v. State, supra; State v. Russell, supra; 31 Am.Jur., 1958, Jury, § 158, p. 139; 50 C.J.S. Juries § 208b, pp. 945-947. But to agree that courts have that right does not entirely dispose of the question before us. We must go further and decide whether the additional cause contended for in this case raised a conclusive presumption against the fitness of the prospective juror or if it only raised a rebuttable presumption of unfitness. If the presumption is conclusive, then like statutory causes, the relation of attorney and client between juror and counsel disqualifies the juror as a matter of law. If the presumption is rebuttable, the matter rested in the properly exercised sound discretion of the trial court and, as in all other matters where discretion is exercised, this court will not interfere unless it affirmatively appears the decision of the court was without substantial evidence to support it or that it was in abuse of discretion or tinged with fraud. 31 Am.Jur., 1958, Jury, § 205, pp. 173-175, notes that cases on the subject are conflicting, but says that for the most part the conflicts arise from statutory differences. However, the discussion does not cover the exact point of the conclusive or rebuttable character of the relation as being grounds for disqualification. The appellant has likewise left this phase of the question untouched both in brief and argument. It also seems to be one of first impression before this court. This has caused us to be at some pains to ascertain how courts in other jurisdictions have viewed the matter. Klinck v. State, supra, cited by appellant, goes only to the right of the trial court to disqualify a prospective juror when it is shown he is presently a client of counsel in the case, but it does not

hold that where the relation exists the court is required, as a matter of law, to sustain a challenge for that cause. The same may be said with respect to Johnson v. State, supra, and State v. Russell, supra, as well as the text statements referred to in 31 AM.Jur., supra. Other cases cited, including Carter v. Territory, 3. Wyo. 193, 18 P. 750, 19 P. 443, are removed from the point and give us no help at all.

Our own search reveals a variety of holdings among which the following are samples. In Frank v. United States, 9 Cir., 59 F. 2d 670, the appellate court held the lower court did not err in excusing a prospective juror where the relation of attorney and client existed between a juror and counsel in the case. Kagele v. Frederick, 43 Wash.2d 410, 261 P.2d 699, and Stockdale v. Eads, Ky., 263 S.W.2d 133, held that as the relation of attorney and client did not exist at the time, the denial of challenge for cause was not an abuse of discretion. In Pioneer Const. Co., v. Schmidt, Mo., 192 S.W. 2d 859, where the juror was Commander of an American Legion Post and had appointed one of the counsel in the case as "legal adviser" of the Post, but testified that, while he had confidence in his appointee because they were good friends, these facts and circumstances would not influence him in arriving at a verdict, the overruling of a challenge for cause was upheld. State v. Carter, 121 Iowa 135, 96 N.W. 710, held that as relation of attorney and client was not specified in Iowa Code (1897), § 5360 (now Iowa Code, 1958, ch. 779, § 779.5 I.C.A.), as cause for challenge, removal of prospective juror who was a party to that relation was not required. The holding was followed in State v. Wright, 192 Iowa 239, 182 N.W. 385. In State v. Glover, 21 S.D. 465, 113 N.W. 625, the Rev. Code Cr. Proc., 1903, § 339, Laws 1903, ch. 172, p. 198 (now South Dakota Code, 1939, Title 34, Judicial Procedure, Criminal, ch. 34.36, § 34.3618, subd. 2), provided as a cause for

challenge, among others, " 'Standing in the relation of guardian and ward, attorney and client, * * * ' ", and held this applied only to that relation between juror and " * * * defendant, or the prosecuting witness, or the person alleged to be injured * * * ". Therefore, a challenge because juror and one of counsel bore relation of attorney and client was not sustained. In Texas Employers' Ins. Ass'n v. Godwin, Tex.Civ.App., 194 S.W.2d 593, where one attorney in the case had represented and probably at the time was representing the wife of a juror, but juror testified that this would have no effect on his verdict or cause him to be biased or prejudiced in any way and he could give both litigants a fair trial on the evidence without regard to who the attorneys for the parties might be, the juror was not disqualified for cause. In People v. King, 30 Cal. App. 2d 185, 85 P.2d 928, under Pen.Code, § 1074, subd. 2, fact that juror and her husband were clients of one of counsel in case, where it did not appear a prejudiced state of mind existed in the juror which would deprive defendants of a fair trial, and court determined prejudice did not exist, that finding of the court was not disturbed. In Bailey v. McLeod, 143 Kans. 638, 56 P.2d 460, a similar ruling was made. People v. Wilkes, 44 Cal.2d 679, 284 P.2d 481, held that although the relation of attorney and client was by statute made a cause for challenge such a relation between a juror and the district attorney or a member of his staff would not disqualify. In Whitney v. Louisville & N. R. Co., 296 Ky. 381, 177 S.W.2d 139, a juror-client of one of the attorneys in the case stated that relation would not embarrass or prejudice him. The court overruled the challenge for cause and this was affirmed. Lumbermen's Insurance Corporation v. Goodman, Tex.Civ. App., 304 S.W.2d 139, affirmed the lower court's overruling of challenge for cause where the attorney-client relation existed between the juror and one attorney in

the case. In Adams v. Severance, 93 N.H. 289, 41 A.2d 233, it was the juror's wife who had employed one of the attorneys in the case and a challenge to her husband-juror was overruled and upheld. But in Turner v. Montgomery Ward & Co., 165 S.C. 253, 163 S.E. 796, where the juror was an employee of the firm of attorneys appearing in the case, the juror was properly excused for cause.

We fail to find a single case where it has been expressly held that it is reversible error to overrule a challenge for cause because the relation of attorney and client existed between the prospective juror challenged for that cause, excepting, of course, in those cases where statutes made it mandatory. This leaves little doubt but that in the absence of such a statutory provision, any bias or prejudice arising from that relation raises, at the most, only a rebuttable presumption, and that the fairness and impartiality of the juror is a matter of fact to be determined by the trial court in the exercise of its sound discretion. It follows that the decision of the trial judge in overruling the challenge to the juror for cause will not be disturbed as we find no abuse of discretion in this case.

With respect to appellant's claim that an improper measure of damages was submitted to the jury, it appears from the agreed statement that the only evidence offered to show the amount of damages suffered was the stipulated amounts expended by appellee for seed and labor. For the year 1953, the only year for which the verdict awarded damages, the agreed amount of the cost of the seed and labor was $3,095. Appellant says that although she agreed to that amount as being the expenses for those items in 1953 that was done merely to expedite the trial. She contends she did not thereby waive her objections that evidence of

such costs was incompetent, immaterial, and irrelevant, or that those costs constituted a proper measure of damage. The stipulation appearing in the agreed statement of the case sufficiently justifies this contention of appellant. We must, therefore, decide whether the cost of seed and labor was properly given to the jury and considered by them as measuring the damage appellee suffered from his loss of crops or, as contended by appellant, that the only correct measure of damage was the value of the crop at the time it was destroyed.

To sustain her position, appellant relies principally upon what this court said in Hatch Bros. Co. v. Black, 25 Wyo. 109, 121, 165 P. 518, 520; Id., 25 Wyo. 416, 171 P. 267, and in Bader v. Mills & Baker Co., 28 Wyo. 191, 203 et seq., 201 P. 1012, 1016 et seq., and the authorities referred to in those cases.

Hatch Bros. Co. v. Black, supra, is of little help because all that was said which is pertinent was:

" * * * The measure of damages for injury to, or destruction of, crops is the value of the crops in the condition they were in at the time and place of the injury or destruction. * * * "

But this leaves unsettled how damage is to be measured where there is no market value of that which is injured or destroyed.

Bader v. Mills & Baker Co., supra, is somewhat more helpful. In quoting from Roberts v. Lehl, 27 Colo. App. 351, 149 P. 851, Candler v. Ditch Co. (Washoe Lake Reservoir & Galena Creek Ditch Co.), 28 Nev. 151, 80 P. 751, 6 Ann.Cas. 946, and Naylor v. Floor, 51 Utah 382, 170 P. 971, the court apparently approves of formulas given for ascertaining damage where the crop has no market value at the time and place of loss and where there is a reasonable certainty the crop would have matured. Similar methods for determin-

ing crop values are referred to in 15 Am.Jur., Crops, § 72, p. 256, and 25 C.J.S. Damages § 85b, p. 610. It should not, however, be overlooked that this court in the Bader case, supra, 28 Wyo., at page 207, and 201 P. at page 1017, said:

" * * * We do not here determine the sole measure of damages that should govern in such cases, but simply whether the instruction given in this case by the lower court is substantially correct. * * *"

This leaves the question open for further consideration at this time.

A major reason for lack of agreement between courts concerning the proper measure of damage for injuries to or destruction of crops seems to arise from various holdings as to what evidence is proper to establish the damage value, but as was pointed out in International Agr. Corporation v. Abercrombie, 184 Ala. 244, 63 So. 549, 552, 49 L.R.A., N.S., 415, 420; Note 140 Am.St.Rep. 309; (which statement was adopted in 15 Am.Jur., Crops, § 75, p. 259) :

" ' * * * There is no doubt, however, that compensation for the real injury is the purpose of all remedies. * * * ' "

In the same vein, 15 Am.Jur., Damages, § 125, p. 534, says:

"The fact that personal property which is injured or destroyed by the wrongful or negligent act of another has no market value does not restrict the recovery to nominal damages only; its value or the plaintiff's damages must be ascertained in some other rational way, and from such elements as are attainable. * * " (Citing numerous authorities).

Following that sentence is the further well-supported statement:

"In such case the proper measure of damages is generally its actual value or its value to the owner. The value of an article may be shown by proof of such elements or facts affecting the question as may exist—such as its cost, * * * "

One more statement along the same line appears in 15 Am.Jur., Damages, § 122, at page 531, which reads: "The test of market value is, at best, but a convenient means of getting at the loss suffered and may be discarded, and other more accurate means resorted to, if, for special reasons, it is not exact, or otherwise not applicable. Thus, if the market value would not be a fair compensation to the plaintiff for his loss, he is sometimes permitted to recover the value to him based on his actual money loss. * * * "

An early case, Baltimore & O. S. W. Ry. Co .v. Stewart, 128 Ill.App. 270, 274; Note, 27 L.R.A., N.S., 169, says explicitly:

" * * * The true rule is: 'Where the crop is not up, the damage should be estimated upon the basis of the rental value and the cost of seed and labor in preparing the ground and planting the crop; where the crop is up, but not so far matured that the product can be fairly determined, the injured party can recover, in addition to the above, the cost of any labor bestowed after the planting; where the crop is more or less matured so that the product can be fairly determined, the value of the crop at the time of the loss is the measure of damages, and it is only where the crop is fully matured and ready to be harvested, that the damage can be determined by the market value of the crop, less the cost of harvesting and marketing, which must include all care and preparation for marketing, such as packing, crating, baling, threshing and the like, according to the nature of the crop.' "

We may concede that ordinarily the measure of damages for the loss or destruction of personal property is its market value, if it has a market value. 15 Am. Jur., Damages, § 122, p. 530. And, generally speaking,

the value of the crops destroyed is to be determined as of the time and place of its destruction, injury or taking. 15 Am.Jur., Damages, § 123, p. 531; 25 C.J.S. Damages § 85b, p. 610.

The only information given us here by the agreed statement of the case is that the jury found the appellant had destroyed the appellee's crops to his damage amounting to $2,351 and that the only evidence on the question of the amount of damages submitted to the jury was the stipulated cost of seed and labor. We are not informed of the state of growth that may have occurred or even that the seed had sprouted. It seems apparent that planted seed which had not even germinated would have been without any market value if the destruction occurred at that time and the same is more or less true up to the time the crop had grown to a point where it might at least have had value as pasturage. We will not, however, speculate upon these possibilities, especially as the appellee seemed content to recover only for the amounts he was out of pocket for his seed and labor without seeking reimbursement for any anticipated profit from his farming effort although such a profit might also have been reasonably expected.

To say that damage was not suffered, at least to the extent of the reasonable value of his lost seed and labor, refuses to recognize a plain, obvious and indisputable fact. True, those expenses may be subject to challenge as to their reasonableness, for a recovery should not be allowed on the basis of an exorbitant or fanciful price. 15 Am.Jur., Damages, § 125, p. 535. But the legitimacy of those costs in this case is placed beyond challenge by their being stipulated by the parties.

The final contention of appellant that appellee's

cross-petition insufficiently alleged a cause of action is evidently abandoned, for we find nothing in appellant's brief to support it nor do we recall anything in appellant's oral argument to indicate it was being seriously advanced. In any event our examination of the pleading convinces us the claim is without merit.

As we find no error in the selection of the jury or in the submission of the stipulated cost of the seed and labor to the jury as evidence of the damage suffered by the appellee in the loss of his crop, where the verdict awarded him a sum within that stipulated amount, the verdict and judgment of the trial court is affirmed.

AFFIRMED.

## ON PETITION FOR REHEARING

(Oct. 7, 1958, 330 Pac (2d) 112)

Before BLUME, C. J. and HARNSBERGER and PARKER, JJ.

### OPINION

Mr. Justice HARNSBERGER delivered the opinion of the court.

The appellant asks rehearing on the theory that in examining the decision of the lower court this court had given consideration to the degree of the crop maturation. This premise is completely incorrect, as we expressly refused to speculate upon the degree of the crop maturation and there was no evidence brought to us by the appeal on that subject.

The petition for rehearing must, therefore, be denied.

DENIED.